JACIEL CIRRUS ROJAS,

                Petitioner,

    v.                                          Case No. 25-cv-1437-bhl

SAMUEL OLSON, Field Office Director, Chicago
Field Office, Immigration and Customs Enforcement;
and SCOTT SMITH, Jail Administrator,
Dodge County Jail,

                Respondents.

---

## ORDER ON PETITION FOR HABEAS CORPUS

---

        Jaciel Cirrus Rojas is an unregistered alien and citizen of Mexico who has lived in the United States without authorization for seven years. On June 3, 2025, he was arrested by U.S. Immigration and Customs Enforcement (ICE) agents and is now being detained at the Dodge County Jail in Juneau, Wisconsin. An immigration judge ruled that Cirrus Rojas should be released on bond, but ICE has appealed that ruling and, by regulation, Cirrus Rojas's release has been stayed pending appeal. On September 17, 2025, Cirrus Rojas filed a petition for writ of habeas corpus and complaint for emergency injunctive relief, asking this Court to order his immediate release pursuant to 28 U.S.C. §2241. (ECF No. 1.) Eight days later, he filed a motion for temporary restraining order and preliminary injunction, requesting the same relief. (ECF No. 4.) The Court has screened Cirrus Rojas's habeas petition under Rule 4 of the Rules Governing Section 2254 Cases,[1] (ECF No. 5), Respondents have answered, (ECF No. 11), and the Court heard argument at an October 14, 2025 telephonic hearing, (ECF No. 18). The parties agree that the issues presented are legal and the Court should proceed directly to the merits of Cirrus Rojas's petition. *See* Fed. R. Civ. P. 65(a)(2). Because Cirrus Rojas has not shown that his detention is contrary to federal law, his petition and motion for injunctive relief will be denied.

---

[1] The Rules can also apply to §2241 petitions. *See* Rule 1(b) of the Rules Governing §2254 Cases in the United States District Courts; *see also* Civ. L. R. 9(a)(2) (E.D. Wis.).

## BACKGROUND

Cirrus Rojas is a native and citizen of Mexico. He was never formally admitted to the United States but, without authorization, has been present here since 2018. (ECF No. 1 ¶2.) While here illegally, Cirrus Rojas has avoided criminal arrest or conviction. (*Id.* ¶4.) On June 3, 2025, however, he was arrested for immigration violations pursuant to an ICE warrant. (*Id.* ¶23; ECF No. 1-2.) ICE immediately placed him in removal proceedings and determined that he should be detained without bond pending completion of those proceedings. (ECF No. 1-4.)

Cirrus Rojas sought review of ICE's detention decision in the immigration court, which held a "bond redetermination" hearing on July 15, 2025. (ECF No. 1 ¶24; ECF No. 1-1.) ICE officials argued that aliens like Cirrus Rojas, who are present and living in the United States without permission, are "applicants for admission" under 8 U.S.C. §1225 and therefore ineligible for release on bond. This represents a change from longstanding immigration practice and is based upon recent (non-public)[2] interim guidance announced to ICE employees on July 8, 2025. The immigration judge rejected ICE's argument and ordered Cirrus Rojas released on a $1,500.00 bond. (*Id.*; ECF No. 1-1.)

ICE filed a form Notice of ICE Intent to Appeal Custody Redetermination on that same day. (ECF No. 1 ¶26; ECF No. 1-6.) Under regulations promulgated by the Attorney General, this filing automatically stayed Cirrus Rojas's release for 10 days to allow the government time to file a notice of appeal. *See* 8 C.F.R. §1003.6(c)(1) & 1003.19(i)(2). ICE perfected its appeal by filing a formal notice of appeal on July 24, 2025. (ECF No. 1-7.) Proceedings concerning Cirrus Rojas's status and ability to remain in the United States continue. ICE's appeal of the bond ruling remains pending before the Board of Immigration Appeals, and removal proceedings in which Cirrus Rojas is now requesting asylum are pending in the immigration court, which has set another hearing set for October 29, 2025. (ECF No. 1 ¶31.)

## ANALYSIS

Cirrus Rojas's habeas petition asserts three interrelated claims. First, he alleges he is being held in violation of his Fifth Amendment due process rights. (ECF No. 1 at 25–26.) Cirrus Rojas admits he was initially afforded due process when he received a bond hearing before an

---

[2] Cirrus Rojas supplied the Court with screenshots of this guidance. (ECF No. 1-5.) The Court asked Respondents to supply a formal copy, but counsel indicates the guidance has not been "officially or publicly released" and thus he is unable to produce one. (ECF No. 19.) The Court does not doubt counsel's report and, without casting aspersions on his conduct in this case, notes that ICE could aid its credibility by being more forthright.

immigration judge. But he contends that having been granted bond by that immigration judge, he is entitled to be released immediately, and his continued detention violates due process under the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (ECF No. 4-1 at 8, 11–13.) Cirrus Rojas's second claim is that his continued detention violates the Immigration and Nationality Act (INA). (ECF No. 1 at 26–27.) Cirrus Rojas argues that his arrest and detention are governed by 8 U.S.C. §1226, pursuant to which the immigration judge granted him release on bond. (*Id.*; ECF No. 4-1 at 8.) He insists that ICE's invocation of 8 U.S.C. §1225 to argue for his detention is incorrect and a deviation from decades of established practice in the immigration courts. (*See* ECF No. 1 ¶¶25, 41.) Cirrus Rojas's third claim challenges the automatic stay of his release pursuant to 8 C.F.R. §1003.19(i)(2), a regulation he contends is *ultra vires*. (*Id.* at 27–28.) Under this regulation, ICE's filing of a notice of appeal halted Cirrus Rojas's release while his appeal proceeds. Cirrus Rojas contends the regulation exceeds the statutory authority granted to the Attorney General, rendering his continued detention unlawful. (ECF No. 4-1 at 14.)

Respondents dispute these claims. They argue that Cirrus Rojas is receiving the process he is due under U.S. immigration law. Respondents point out they have promptly initiated formal removal proceedings and Cirrus Rojas's ongoing detention is authorized under 8 C.F.R. §1003.19(i)(2), which permits his detention pending appeal, subject to specific time limitations. (ECF No. 11 at 22–23.) With respect to the INA, Respondents argue that Cirrus Rojas is present in the United States without admission or parole and is therefore an "applicant for admission" who must be detained under Section 1225(b)(2)(A) while his removal proceedings are adjudicated. (*See* ECF No. 1-7 at 4.) They acknowledge a change from the agency's prior handling of similar unauthorized aliens but insist that the plain text of the statute trumps earlier agency practice. They further observe that their interpretation provides equal treatment to unadmitted aliens apprehended at the border and those who were initially able to evade border agents but were then later arrested. Finally, Respondents argue the automatic stay provision in 8 C.F.R. §1003.19(i)(2) is a valid rule enacted by the Attorney General that serves the legitimate purpose of maintaining the status quo while DHS appeals the immigration judge's custody order. (ECF No. 11 at 19–20.)

## I. Despite Multiple Statutory Hurdles, the Court Concludes it Has Jurisdiction to Resolve Cirrus Rojas's Petition and Motion.

The Court's first order of business is to confirm that it has jurisdiction. "Federal courts are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute."

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The limits of the Court's jurisdiction are "not to be expanded by judicial decree." *Id.*

Congress has given Article III courts, and district courts in particular, a narrow role in immigration proceedings. In the normal course, immigration matters rarely come before the district court. By statute and regulation, immigration proceedings are entrusted to Article I courts—the Immigration Court and the Board of Immigration Appeals—established within the Department of Justice. Challenges to final orders from those administrative courts are heard directly by the courts of appeal and bypass the district courts entirely. 8 U.S.C. §1252(a)(5); *See Parra v. Perryman*, 172 F.3d 954, 956 (7th Cir. 1999) (citing *LaGuerre v. Reno*, 164 F.3d 1035 (7th Cir. 1998). But the fact that these matters do not come to this court in the ordinary course does not mean they can never properly be brought here.

As noted in the screening order, several statutory limitations might apply to Cirrus Rojas's claims. Section 1252 of Title 8 is entitled "Judicial review of orders of removal" and at least two of its subsections are facially implicated by Cirrus Rojas's petition. Under Section 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Section 1252(g) places more limits on judicial review of certain immigration matters:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Congress has also enacted a jurisdiction-limiting provision for detention rulings in particular. Section 1226(e) provides that:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

The Supreme Court has offered limiting constructions of all three provisions. In *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 477 (1999), the Supreme Court adopted a narrow reading of Section 1252(g) in the context of claims by a group of resident aliens who alleged they were being selectively targeted for deportation in violation of their First and Fifth Amendment rights. The Court emphasized that Section 1252 applied "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" 525 U.S. at 482 (emphasis in original). Because the case involved a challenge to the Attorney General's decision to "commence" proceedings, it fell squarely within Section 1252 and the Court vacated lower court rulings in the resident aliens' favor for lack of jurisdiction. *Id*. at 492.

Four years later, in *Demore v. Kim*, 538 U.S. 510, 517 (2003), the Supreme Court offered a narrow construction of Section 1226(e) in connection with a lawful permanent resident alien's habeas challenge to his detention without a bail while he awaited removal after being convicted on burglary charges. The district court had granted the alien's Section 2241 petition, concluding that detaining him without a finding that he posed a danger to society or was a flight risk violated due process. *Id*. at 514. The Ninth Circuit affirmed. *Id*. at 515. Before reversing the lower court rulings, the Supreme Court questioned whether Section 1226(e) deprived the federal courts of jurisdiction to consider the habeas petition. *Id*. at 516. The Court held that Section 1226(e) was limited to challenges to the Attorney General's "discretionary judgment" regarding the detention or release of an alien. *Id*. Because the petitioner challenged the statutory framework under which he was being detained, not any discretionary judgment, the Court concluded that Section 1226(e) did not deprive the federal courts of habeas jurisdiction. *Id*. at 517–18.

Most recently, in *Jennings v. Rodriquez*, 583 U.S. 281, 294–95 (2018), a plurality of the Supreme Court concluded that neither Section 1252(b)(9) nor Section 1226(e) precluded judicial review of a lawful permanent resident's habeas challenge to his ongoing detention after being adjudicated removable and while awaiting removal. The district court and Ninth Circuit had ruled that the petitioner and a class of similarly situated aliens were entitled to periodic bond hearings, concluding that the right to such bond hearings was "implicit" in the immigration statutes, a construction necessary to avoid due process issues. *Id*. at 292. Before rejecting the lower courts' interpretation on the merits, the Court addressed its jurisdiction. *Id*. at 292–94. The Court first acknowledged that the petition could be said to raise questions of law and fact "arising from"

proceedings to remove petitioners but, citing *American-Arab Anti-Discrimination Committee,* rejected an "expansive" interpretation of Section 1252(b)(9). *Id.* at 294. The Court declined to provide a "comprehensive interpretation" of the statute but held that because the case did not involve review of a removal order or a challenge to a detention or removal decision or to any part of the removal process, Section 1252(b)(9) was not a "jurisdictional bar." *Id.* at 294–95. The Court then turned to Section 1226(e) and reaffirmed its prior interpretation from *Demore. Id.* at 295. The Court explained that because the claimants challenged the statutory framework mandating their detention without a bond hearing as a whole, they were not challenging a "discretionary decision," and Section 1226(e) was not a jurisdictional barrier. *Id.*

Given these Supreme Court rulings, the Court concludes there is no jurisdictional bar to its consideration of Cirrus Rojas's petition. Unlike the plaintiffs in *American-Arab Anti-Discrimination Committee,* Cirrus Rojas is not challenging the Attorney General's decision to *commence* proceedings against him, to *adjudicate* his immigration case, or to *execute* a removal order. Accordingly, Section 1252(g) is not an issue. And, while Cirrus Rojas is in a different position than the habeas petitioners in *Demore* and *Jennings* – he is not a permanent resident alien and his removal proceeding remains ongoing – his challenge, like theirs, does not implicate a "discretionary judgment" of the Attorney General regarding his detention, but rather attacks her regulations and her interpretation of the statutory framework relating to his detention. While Cirrus Rojas's petition could be said to "arise from" actions taken to remove him, the Court will not adopt an expansive reading of that language. *See Jennings,* 583 U.S. at 294–95. The Court therefore concludes that neither Section 1252(b)(9) nor Section 1226(e) preclude jurisdiction either. *See Parra,* 172 F.3d at 957.

## II.     Jurisdictional Issues Aside, Cirrus Rojas Has Not Shown That His Detention Violates the Constitution or Federal Law.

Cirrus Rojas seeks habeas relief under Section 2241, which confers jurisdiction on district courts to order the release of a detainee who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3); *see INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (historically "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."). A habeas petition under Section 2241 allows persons in custody to challenge the fact or duration of their confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973); *Waletzki v. Keohane*, 13 F.3d 1079,

1080 (7th Cir. 1994). The Supreme Court has recognized Section 2241 as a forum for statutory and constitutional challenges to detention orders in immigration proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Cirrus Rojas's request for injunctive relief is governed by Federal Rule of Civil Procedure 65.

Cirrus Rojas asserts that his continued detention, after being granted bond by an immigration judge, violates the U.S. Constitution's Due Process Clause, the Immigration and Nationality Act, and is *ultra vires*. (ECF No. 1 ¶¶5, 90–106.) He asks this Court to provide affirmative injunctive relief by ordering his release pursuant to the immigration court's bond ruling and enjoining Respondents from continuing his detention contrary to that ruling and in violation of his due process rights. (*Id.* ¶10.) Central to his petition is Cirrus Rojas's contention that ICE cannot rely upon Section 1225(b) to detain him. He contends that he is statutorily entitled to a bond hearing under Section 1226(a) and, based on past agency practice, Section 1225(b) does not even apply to him. Having been granted bond by an immigration judge, Cirrus Rojas insists his continued detention violates due process. He also contends that 8 C.F.R. §1003.19(i)(2), the regulation that has stayed his release pending appeal, is *ultra vires* and beyond the Attorney General's statutory authority. Finally, he contends that ICE's use of this regulation to block his release while it appeals the bond ruling violates his due process rights.

These issues are complex and interrelated. The Court will first address the text of Sections 1225 and 1226. It will then turn to the parties' competing interpretations of those provisions. It will next address the challenged regulation and the stay of Cirrus Rojas's release pending the conclusion of his appeal. Because the Court concludes that Respondents have the better of the statutory argument, it does not find that Cirrus Rojas is being detained in violation of the INA. While a majority of district courts have agreed with Cirrus Rojas's construction, no appellate court has yet reached the issue, and the statutory text is more consistent with Respondents' position. Even if the Court were to conclude otherwise, however, the record confirms that the stay of his release pending appeal, under 8 C.F.R. §1003.19(i)(2), serves a legitimate function, is properly limited, and does not violate Cirrus Rojas's due process rights.

**A. Cirrus Rojas's Detention Does Not Violate the INA.**

Cirrus Rojas challenges ICE's interpretation of two provisions of the INA, codified at 8 U.S.C. §§1225 and 1226. The INA is a complicated statute that has been amended multiple times since being enacted in 1952. The relevant language in the two provisions at issue was added by

Congress in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Both sections authorize the government to detain individuals pending resolution of removal proceedings. Determining how these sections interrelate, how they apply to various categories of aliens facing removal, and how they fit into federal immigration law as a whole is a challenge.[3]

> **1. Section 1225 Addresses "Applicants for Admission" and Provides for Expedited Removal of Certain Undesirable or Dangerous Aliens.**

Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Subsection (a) concerns the "inspection" of aliens by immigration officers. Central to the parties' dispute is a definitional section, 1225(a)(1), which identifies those aliens who are to be "treated as applicants for admission." The text provides:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. §1225(a)(1). Moving through the statute, Section 1225(a)(2) clarifies that stowaways are not eligible for admission and are to be ordered removed immediately after being inspected by immigration officials. Section 1225(a)(3) then provides that all applicants for admission or readmission must be inspected by immigration officers, and Section 1225(a)(4) allows aliens who are applying for admission to withdraw their applications and depart immediately from the country. Section 1225(a)(5) authorizes immigration officials to take statements from applicants under oath concerning their intentions in seeking admission.

Section 1225(b) is entitled "Inspection of applicants for admission." It mandates expedited removal proceedings for certain types of applicants for admission. Generally, if an immigration officer finds that an alien is inadmissible because of fraud or due to documentation issues, the official must order the alien removed without further hearing unless the alien indicates an intention to apply for asylum or expresses a fear of persecution. *See* 8 U.S.C. §1225(b)(1)(A)(i) & (ii). The

---

[3] The parties and caselaw do not make things easier by alternately referring to these provisions with citations to the INA and its amendments as enacted and to the codified form of the statute in Title 8. In an attempt to keep things simpler, this Court will stick to the Title 8 citations.

statute also authorizes the Attorney General to designate certain other aliens for similar expedited removal so long as those aliens have not been previously admitted and have not shown they were continuously physically present in the United States for the preceding two years. *See* Section 1225(b)(1)(A)(iii). In Section 1225(b)(1)(F), Congress carved out an exception to this expedited removal process for citizens of a "country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry."

Section 1225(b)(2) is central to Respondent's position. It addresses the "Inspection of other aliens" and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding" under 8 U.S.C. §1229a. The statute also allows the Attorney General to return aliens who arrive on land from a contiguous foreign territory to that foreign territory pending removal proceedings. 1225(b)(2)(C). The balance of Section 1225 is largely procedural, describing the process for expedited removal, review by the Attorney General, the alien's right to submit information, and the authority of immigration agents to search, detain, subpoena, and administer oaths.

### 2. Section 1226 Authorizes the Arrest and Detention of Aliens.

Section 1226 is entitled "Apprehension and detention of aliens." Subsection (a) provides general authority to the Attorney General to issue warrants for the arrest and detention of aliens pending a decision on their removability. It also allows the Attorney General to continue the detention of the arrested alien or, with the exception of certain criminal aliens who are ineligible for admission, release them on bond or parole. *Id*. Section 1226(b) provides for the revocation of bond or parole granted under subsection (a).

Section 1226(c) mandates that the Attorney General take into custody aliens who are inadmissible or subject to removal for a variety of criminal offenses, many of which are outlined in other sections of the INA. This part of the statute was amended within the last year by the Laken Riley Act to specifically require the detention of aliens arrested for certain crimes: burglary, theft, larceny, shoplifting, assault of a law enforcement officer, or any crime that results in death or serious bodily injury.[4] *See* 8 U.S.C. §1226(c)(1)(E)(ii). Finally, under Section 1226(c)(4), aliens

---

[4] The Laken Riley Act also amended Section 1225(b) to authorize State Attorney General enforcement powers. *See* 8 U.S.C. §1225(b)(3).

who are subject to mandatory detention may only be paroled or released for witness protection purposes.

### 3. The Parties' Competing Constructions of DHS's Detention Authority under Sections 1225 and 1226.

Cirrus Rojas contends he is governed by Section 1226(a), not Section 1225(b)(2), and his detention is therefore discretionary, not mandatory. Having been given a bond hearing and granted bond, he argues he is statutorily entitled to be released consistent with the immigration judge's bond ruling. Cirrus Rojas defends this interpretation by invoking past immigration practice and the statutory text.

Cirrus Rojas first emphasizes that immigration officers have historically treated unadmitted aliens like him, who have been arrested within the United States (not at the border), as eligible for release on bond. (ECF No. 1 ¶¶38–39.) He represents that the government has consistently taken this approach from the time the IIRIRA was enacted in 1996 until this summer. (*Id*. ¶39.) He cites two House reports related to the IIRIRA's passage that indicate Congress's intention to continue detention practices from the pre-IIRIRA time period. (*Id*. ¶40.) He further notes that pre-IIRIRA, the Attorney General was authorized to release unadmitted aliens on bond or parole. (*Id*.) Finally, he calls ICE's change in approach under the July 8, 2025 interim guidance a dramatic shift adopted "without warning and without any publicly stated rationale." (*Id*. ¶41.) He contends that treating unadmitted aliens apprehended inside the country differently than new arrivals detained at the border is consistent with the "core logic" behind the immigration system. (*Id.* ¶43.)

Turning to the statutory text, Cirrus Rojas highlights the plain language of Section 1226(a), which authorizes the Attorney General to release aliens on bond pending resolution of removal proceedings. He then points to his arrest warrant, which cites INA "Section 236," codified at 8 U.S.C. §1226, *not* INA Section 235, codified at 8 U.S.C. §1225. He provides a long list of district courts that have adopted his and rejected ICE's interpretation of these two sections. Substantively, he argues that Section 1225 should be read to apply only to aliens who are "seeking admission" and apprehended at the border. He contends that because he was already living in the United States, he was not seeking admission and is not covered by Section 1225. (*See Id.* ¶48.) Next, he insists the INA needs to be interpreted as a whole to give a consistent and sensible reading to all sections in their entirety. (*Id.* ¶50.) Finally, he contends Respondents' interpretation renders the recently enacted Laken Riley Act superfluous. (*Id.* ¶51.)

Respondents' arguments are largely textual. They acknowledge that both Section 1225 and 1226 address the detention of aliens awaiting removal. Respondents emphasize the plain terms of Section 1225(a) and its definition of "applicants for admission." (ECF No. 11 at 3.) They also cite the INA's express definition of "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." (*Id.* citing 8 U.S.C. §1101(a)(13)(A).) Because Cirrus Rojas was arrested while present in the United States and not lawfully admitted, Respondents argue, he falls within Section 1225(a)'s definition and is subject to Section 1225's treatment of applicants for admission. (*Id.* at 13–16.)

Respondents then explain that Section 1225(b)(1) provides for the *expedited* removal of two categories of applicants for admission and concede that Cirrus Rojas does not fall into either group. As to the first statutory category, Respondents contend that expedited removal and mandatory detention are required for aliens arriving in the United States who are inadmissible for fraud or documentation issues under 8 U.S.C. §1182(a)(6)(C) and 1182(a)(7). As to the second group, Respondents state that the Attorney General is also authorized to apply the same expedited removal approach to certain other aliens who have not been admitted or paroled into the country, have not affirmatively shown they have been physically present for the preceding two years, and are not otherwise inadmissible. Respondents argue that Cirrus Rojas does not fall into either of these categories but instead falls within the coverage of Section 1225(b)(2), which they call a "catchall" provision. (ECF No. 11 at 4.) In Respondents' view, Section 1225(b)(2) requires the detention of all other "applicants for admission," pending removal proceedings, if an immigration officer determines they are not "clearly and beyond a doubt entitled to be admitted." (*Id.* at 13–14.) Under this reading, Section 1225(b)(2) mandates Cirrus Rojas's detention.

According to Respondents, Section 1226(a) does not apply to Cirrus Rojas. They maintain that Section 1226(a) applies to foreign nationals who are *not* "applicants for admission." This means that Section 1226(a) applies to lawfully admitted aliens, like lawful permanent residents, and allows for their arrest and discretionary detention or release on bond pending resolution of their removal proceedings. Applicants for admission, like Cirrus Rojas, on the other hand, are subject to the mandatory detention provisions in Section 1225. They further contend that their interpretation sensibly treats unadmitted aliens facing removal the same, regardless of whether the alien is apprehended at the border or within the country.

Based on the text, the Court concludes that Respondents' interpretation is the better one, although the statutory language and interplay between these sections could certainly be more clear. Cirrus Rojas meets the definition of "applicant for admission" in Section 1225(a)(1). He is an alien "present" in the United States and he has not been "admitted." Under the plain terms of Section 1225(a)(1), he is "deemed" an applicant for admission for purposes of Chapter 12 of Title 8, which governs Immigration and Nationality. Of all the statutory terms at issue, this is perhaps the most straightforward. Indeed, Cirrus Rojas's counsel admitted at oral argument that he fell within the plain terms of the definition in Section 1225(a)(1) but urged the Court to interpret the "applicant for admission" as not applying to Cirrus Rojas based on the INA as a whole.

The Court has attempted to review the statute as a whole, including all parts of the INA to which the parties refer, and it cannot find a statutory basis to exclude Cirrus Rojas from the definition of "applicant for admission" in Section 1225(a)(1). Cirrus Rojas directs the Court to additional language in Section 1225(b)(2) that refers to aliens who are "seeking admission" and argues the use of present tense means that it was intended to apply only to those aliens who arrive and are being detained at the border. The Court finds this argument unpersuasive. Section 1225(b)(2) also uses the term "applicant for admission" and, while it then refers to aliens "seeking admission," nothing in the provision suggests the intention Cirrus Rojas proposes. In the Court's view, this language is best read as simply another way of referring to aliens who are applicants for admission. Cirrus Rojas would pack a lot of meaning into what appears to be an alternate phrasing. Moreover, and in any event, Cirrus Rojas's argument fails on the facts. The record confirms that Cirrus Rojas is now in fact seeking admission to the United States. His petition acknowledges that he has an application for asylum pending in the immigration court and he is thus presently seeking authorization to remain in this country. (ECF No. 1 ¶9.) Indeed, one suspects that upon apprehension most unadmitted aliens promptly seek admission and permission to stay; their alternative is to elect to remove themselves voluntarily. This undercuts the logic of Cirrus Rojas's argument.

The Court is also unpersuaded that Congress's passage of the Laken Riley Act defeats Respondents' construction of Section 1225(b)(2). As Respondents note, legislation passed in 2025 has little bearing on the meaning of legislation enacted in 1996. Indeed, nothing in the Laken Riley Act suggests any Congressional thoughts concerning the issues presented in this case. This recent legislation was aimed at making sure that certain aliens, whom Congress deemed dangerous,

were necessarily detained pending their removal, lest they commit further crimes while released. These newly added provisions do not indicate anything with respect to either party's proposed interpretation of Sections 1225 or 1226.

Cirrus Rojas's most persuasive efforts are his references to immigration officials' history of treating unadmitted aliens like Cirrus Rojas as eligible for bond under Section 1226(a). While the Supreme Court has largely ended judicial deference to agency interpretations of acts of Congress, *see Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 432–33 (2024), nearly three decades of a particular interpretation ought to inform the Court's approach. This history of performance gives the Court particular pause given the complexity of the INA and its amendments. Beyond citing *Loper Bright*, the parties provide little legal guidance on the appropriate weight the Court should give past agency practice. Cirrus Rojas has not given the Court any historical materials explaining or justifying immigration officials' prior approach or interpretation of Sections 1225 or 1226. If there was a documented prior rationale, the Court has not seen it. In the end, the Court concludes that it must follow the most natural reading of the statutory text. Prior administrations' generous interpretations of these laws, while relevant to understanding that text, do not and cannot rewrite it. As explained above, Respondents' reading is more consistent with the plain terms of Section 1225(b). Cirrus Rojas's argument is akin to estoppel. He wants to preclude ICE from adopting a new, different interpretation based on its past practice. But there is no estoppel against the federal government. *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990) ("From our earliest cases, we have recognized that equitable estoppel will not lie against the Government as it lies against private litigants."); *Gutierrez v. Gonzales*, 458 F.3d 688, 691 (7th Cir. 2006) ("The Supreme Court has *never* affirmed a finding of estoppel against the government.") (emphasis in original). The Court must apply the statute as it is written.

The Court also does not agree with Cirrus Rojas that language in his arrest warrant citing Section 1226 entitles him to discretionary detention under Section 1226. The top of the DHS warrant form directs the warrant to the attention of "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act [codified at 8 U.S.C. §§ 1226 and 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (ECF No. 1-2.) This language is best read not as an invocation of Section 1226 or an admission that that provision applies to Cirrus Rojas. Rather, it describes the agents to whom the warrant is directed and identifies two sources for their arrest authority. This language

does not state that Cirrus Rojas is subject to the discretionary detention provisions of Section 1226 or excepted from the provisions of Section 1225.

Cirrus Rojas repeatedly emphasizes the number of other district courts that have adopted his position. His petition and briefing bullet point more than 45 cases from other district courts rejecting Respondents' textual analysis and adopting his own. For their part, Respondents cite a handful of cases reaching the opposite conclusion. Beyond numbers, neither party directs the Court to compelling analyses from any of these decisions. While these rulings give the Court pause, they are not precedential. And only one of the cited cases is from the Seventh Circuit, *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763 (S.D. Ind. Sept. 22, 2025). Its analysis is limited and typical of the decisions adopting Cirrus Rojas's interpretation.

In *Campos Leon*, the Court analyzed the text and interplay between Sections 1225 and 1226 in just five short paragraphs. 2025 WL 2694763 at *3. It concluded that the habeas petitioner's position found "greater support from the facts and plain language of the statute." But that conclusion was based predominantly on the Court's assertion that because the petitioner was arrested and detained pursuant to a warrant, he was necessarily subject to the bond provisions of Section 1226. *Id.* The Court acknowledged for the sake of argument that the petitioner fell within Section 1225(a)(1)'s definition of an "applicant for admission" but offered little analysis of the implications of that determination. *Id.* Instead, the Court simply concluded that because the petitioner in that case was arrested pursuant to a warrant, Section 1226's bond provisions necessarily applied to him without addressing Section 1225 or how its terms might apply.[5] The case was also decided on an expedited basis and in a short time frame. The Court find its analysis unpersuasive.

The parties also refer to a Board of Immigration Appeals decision adopting Respondents' interpretation. (*See* ECF No. 1 ¶78 citing *Matter of Hurtado,* 29 I. & N. Dec. 216 (B.I.A. 2025).) In *Hurtado*, the Board of Immigration Appeals affirmed an immigration judge's decision to deny bond to a citizen of Venezuela who had crossed into the United States in November 2022 without authorization. *Hurtado,* 29 I. & N. at 220, 229. The alien was granted temporary protected status briefly, but when that status expired, he was arrested by ICE agents. He requested a bond hearing

---

[5] Since this case was filed, the Southern District of Indiana has decided a second case involving these issues: *B.D.V.S. v. Forestal*, No. 1:25-cv-01968-SEB-TAB, 2025 WL 2855743 (S.D. Ind. Oct. 8, 2025). *B.D.V.S.* was decided by the same judge and incorporated a similar, abbreviated analysis of the issues. *Id.* at *2.

but, at the hearing, the immigration judge concluded the alien was an "applicant for admission" and ineligible for bond under Section 1225(b)(2). *Id.* at 220. That ruling was affirmed by the Board of Immigration Appeals after a detailed analysis of the statutory backdrop. *Id.* at 218–28. At the hearing, both parties agreed that *Hurtado* has no precedential value and counsel for Cirrus Rojas contended it is merely an agency interpretation to which the Court should give no deference. The Court's analysis is independent of *Hurtado*, but the Court finds its thorough analysis persuasive.

### B. The Stay of Cirrus Rojas's Detention under 8 C.F.R. §1003.19(i)(2) Is Not Unlawful or Unconstitutional.

Cirrus Rojas also argues that he is entitled to habeas relief because his continued detention after being granted bond by an immigration judge violates the INA and the Constitution. He first contends that the regulation that permits his continued detention, 8 C.F.R. §1003.19(i)(2), is *ultra vires*. He further claims that ICE's invocation of that regulation to automatically stay his release pending appeal violates his due process rights. The Court's conclusion that ICE has the better argument in the parties' interpretive battle over Sections 1225 and 1226 largely undercuts Cirrus Rojas's remaining arguments. There is no dispute that the government is following the required procedures in addressing the appeal of Cirrus Rojas's bond ruling and his overall removal proceeding. The Court will nevertheless address Cirrus Rojas's *ultra vires* and due process claims in turn.

#### 1. Cirrus Rojas Has Not Established that the Regulation Permitting the Stay of his Release Pending Appeal is *Ultra Vires*.

Cirrus Rojas complains that he remains detained, even after an immigration judge ruled that he should be released on $1,500 bond, solely because ICE has filed a Notice of Appeal. He argues that 8 C.F.R. §1003.19(i)(2), the regulation that expressly provides for a stay of his release pending resolution of ICE's bond appeal, is *ultra vires* because it exceeds the authority conferred by Congress to the Attorney General and unlawfully overrides an immigration judge's discretionary authority to make custody determinations. (ECF No. 4-1 at 14.)

Department of Justice regulations provide for a potential stay of custody orders when the government files an appeal of the custody order. *See* 8 C.F.R. §1003.19(i). The first part of the regulation gives the Board of Immigration Appeals discretionary authority to grant a stay:

The Board of Immigration Appeals (Board) has the authority to stay the order of an immigration judge redetermining the conditions of custody of an alien when the Department of Homeland Security appeals the custody decision or on its own motion. DHS is entitled to seek a discretionary stay (whether or not on an emergency basis) from the Board in connection with such an appeal at any time.

8 C.F.R. §1003.19(i)(1). The second part of the regulation provides for an "[a]utomatic stay in certain cases." More specifically:

In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR–43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR–43 is subject to the discretion of the Secretary.

*Id.* at (2).

Cirrus Rojas argues that there is no congressional authority for any regulation that would allow anyone within the Department of Homeland Security, including within ICE, to unilaterally stay the immigration judge's bond decision. He insists the opposite is true: Section 1226(a) gives the discretion over bond decisions to an immigration judge. (ECF No. 1 ¶¶57-58.)

But Congress has entrusted the handling of immigration proceedings, including appeals over bond rulings, to the Attorney General and Department of Justice. 8 U.S.C. §1103(g). Exercising this authority, the Department of Justice promulgated 8 CFR §1003.19 to allow a stay of a bond ruling when the Department of Homeland Security/ICE decides to appeal. The automatic stay provision in 8 CFR §1003.19(i)(2) serves the legitimate purpose of maintaining the status quo in those cases where ICE decides to seek an expedited review of an immigration judge's custody order in the Board of Immigration Appeals. *See Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1031 (E.D. Wis. 2007).

Cirrus Rojas's focus on ICE's role in initiating the automatic stay, by filing a notice of appeal, disregards that the Department of Justice, which is responsible for enacting procedures in immigration proceedings, has itself made the decision to provide for this automatic stay. The Department of Justice has decided to make the trigger point for the automatic stay the decision by

ICE to pursue an expedited appeal of a bond ruling. Nothing in the regulation exceeds the Department of Justice's authority or reflects an improper delegation of that authority to ICE.

Moreover, while Cirrus Rojas complains about ICE's "unilateral" authority to halt his release on bond, the regulations accompanying 8 CFR §1003.19(i)(2) guard against misuse. The Attorney General has required that a "senior legal official" certify that ICE's "contentions justifying the continued detention of the alien have evidentiary support" and that its legal arguments are nonfrivolous in order to preserve the automatic stay. *See* 8 C.F.R. §1003.6(c)(1)(ii). Pursuant to 8 C.F.R. §1003.6(c)(4), the automatic stay "shall lapse 90 days after the filing of the notice of appeal." Pursuant to 8 C.F.R. §1003.6(c)(5), any extension of the detention is limited to 30 days and requires that DHS provide some justification for the extension. As discussed below, these procedural limitations and protections undermine any potential due process complaints. The Court rejects Cirrus Rojas's argument that 8 CFR §1003.19(i)(2) is *ultra vires*.

### 2. Cirrus Rojas's Detention Pending Appeal Does Not Violate Due Process.

Cirrus Rojas's final claim is that his continued detention after being awarded bond violates the Due Process Clause under the balancing test set forth in *Mathews*, 424 U.S. at 335. Under *Mathews*, the Court must evaluate three factors in resolving due process challenges to procedures that would deprive an individual of his life, liberty or property. *Id.* The Court must consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail. *Id.*

Cirrus Rojas invokes his significant interest in being free from improper detention. He notes that he has been detained since June 2025, preventing him from seeing his family, working, and participating in his community. (ECF No. 1 ¶83.) He also contends that the current procedures do not simply risk an erroneous deprivation of his liberty but are in fact already causing one. He complains that the automatic stay provision has allowed for his continued detention without any individualized showing that he might be a flight risk or a danger to the community. (*Id.* at ¶84.) As to the third *Mathews* factor, Cirrus Rojas argues that the government's interest in maintaining the "current" procedure is minimal. He contends that the Supreme Court has recognized only two purposes for civil detention: preventing flight and mitigating the risks of danger to the community,

and that both purposes are no longer in play given the immigration judge's bond ruling. And he argues that the procedures governing the appeal of the bond ruling insufficiently protect his rights and could result in lengthy and unfair delays, extending his detention. (*Id.* ¶84.)

Cirrus Rojas's due process challenge faces a steep climb. He correctly observes that the Supreme Court in *Zadvydas* recognized that an alien being detained pending removal has due process rights. 533 U.S. at 693. But *Zadvydas* concerned the detention of aliens for a potentially unlimited time after the conclusion of their removal proceedings. The Court explained that the INA generally gives the government 90 days to remove or deport aliens found to be removable and, while this was usually sufficient, the government was not always able to achieve removal within this "removal period." *Id.* at 683. In those circumstances, 8 U.S.C. §1231(a)(6) authorizes the government to continue detention but it contains no time limitation or other constraint. *Id.* Invoking the constitutional avoidance canon, a majority of the Supreme Court held that Section 1231(a)(6) should be interpreted to include an implied time limitation, allowing detention only for the period "reasonably necessary to bring about the alien's removal." *Id.* at 689.

Since avoiding the due process issues in *Zadvydas*, the Supreme Court and Seventh Circuit have affirmatively rejected due process challenges to the detention of unadmitted aliens in other settings. In *Demore*, decided just two years after *Zadvydas*, the Court rejected a due process challenge by a lawful permanent resident alien who was detained without bail while awaiting removal. 538 U.S. at 514. A district court had granted his habeas petition, concluding that the Due Process Clause entitled him a bond hearing and precluded his detention unless it was found that he posed a danger to society or was a flight risk. *Id.* The Ninth Circuit affirmed. *Id.* The Supreme Court reversed, concluding that the mandatory detention of unadmitted aliens awaiting removal without a bond hearing did not offend due process. *Id.* at 516. The Court distinguished *Zadvydas* because the aliens in *Zadvydas* were stuck in limbo; their individual circumstances were such that their removal was "no longer practically attainable." Accordingly, the governmental interest in detaining them *until* they could be removed was not present; they were likely never going to be removed. The government's detention of the aliens in *Demore*, however, served the legitimate purpose of detaining them to ensure their removability. The Court also noted that while the detention at issue in *Zadvydas* was "indefinite" and "potentially permanent," any detention of the alien in the case before it was limited and of "a much shorter duration." *Id.* at 528. Because

detention was for a defined and limited period, it did not violate the Due Process Clause. *Id.* at 531

In *Jennings*, a plurality of the Supreme Court reaffirmed the reasoning in *Demore* in rejecting a habeas challenge by a lawful permanent resident who argued that his ongoing detention while he appealed his removability violated due process. 538 U.S. at 290–91. Relying on *Zadvydas*, a district court and the Ninth Circuit held the petitioner and a class of similarly situated aliens were entitled to periodic bond hearings, concluding that the right to such bond hearings was "implicit" in the immigration statutes, a construction necessary to avoid due process issues. *Id.* at 291–92. After rejecting the Ninth Circuit's use of the constitutional avoidance canon, the Court highlighted the differences between the limitless period of detention at issue in *Zadvydas* and the limited duration of detention authorized by the statute in *Demore*. *Id.* at 296, 298–301, 304. While the former implicated due process, the latter did not. *Id.* at 304.

In *Parra*, the Seventh Circuit rejected an alien's due process challenge to his mandatory detention while awaiting the conclusion of removal proceedings after his conviction on aggravated sexual assault charges. 172 F.3d at 955. Like Cirrus Rojas, the alien in *Parra*, had been granted bond by an immigration judge, but his release was automatically stayed by the government's appeal of that ruling under 8 CFR §1003.19(i)(2). *Id.* at 956. After reversing the district court's determination that federal jurisdiction was lacking, the Court of Appeals concluded that a remand was unnecessary because the record confirmed the alien's due process challenge failed. *Id.* at 958. The Court noted that the alien's criminal conviction made detention mandatory under Section 1226(c), and, barring a change to immigration law or policy, he had forfeited any *legal* entitlement to remain in the United States. *Id.* It also noted that he could withdraw his defense to the removal proceedings and return to his homeland, ending his detention immediately. *Id.* ("He has the keys in his pocket."). Applying the *Mathews* factors, the Court of Appeals emphasized that the alien's interest was not liberty in the abstract but the more-limited "liberty in the United States by someone no longer entitled to remain" in the country. *Id.* It noted that the probability of error was low given the alien's concession that he was subject to removal. *Id.* The Court then emphasized the government's substantial interest in detention given the high flight rate of those released on bail. *Id.* It finally noted that it had upheld the constitutionality of detaining an alien pending removal proceedings even before passage of the IIRIRA made detention of certain criminal aliens

mandatory. *Id.* If detention did not violate due process when it was discretionary, the Court concluded, it could not be unconstitutional when detention was mandatory. *Id.*

Given the caselaw and the well-defined procedures governing (and limiting) Cirrus Rojas's detention, the Court rejects his due process challenge. Consistent with *Zadvydas* and *Demore*, Cirrus Rojas has a recognizable liberty interest in connection with his pre-removal detention. But as *Demore* held, and *Parra* explains, that liberty interest is limited. Cirrus Rojas is an alien who was found in the United States without authorization and is subject to removal proceedings. Consistent with federal law, he is being provided with the opportunity to oppose removal and using that opportunity to pursue an asylum claim. (ECF No. 1 ¶9.) As explained in *Parra*, Cirrus Rojas's liberty interest is limited, and he has the key to his release in his own pocket; he can choose to accept removal to his homeland under Section 1229a. 172 F.3d at 958.

While Cirrus Rojas complains there is a risk that current procedures will cause an erroneous deprivation of his limited liberty interest, this is undercut by the Court's ruling on the statutory interpretation question. Moreover, the record confirms that he is receiving ample procedural safeguards. While Cirrus Rojas complains that 8 C.F.R. §1003.19(i)(2) allows ICE to forestall his release unilaterally by filing a notice of appeal, Cirrus Rojas's rights are protected in multiple ways. As an initial matter, 8 C.F.R. §1003.6(c)(1)(ii) requires that a "senior legal official" certify that DHS's "contentions justifying the continued detention of the alien have evidentiary support" and that its legal arguments are nonfrivolous in order to preserve the automatic stay. These are not trivial requirements. And any stay is not indefinite. As Cirrus Rojas himself admits, the automatic stay will "lapse 90 days after the filing of the notice of appeal," under 8 C.F.R. §1003.6(c)(4), and any extensions of the detention are limited to 30 days under 8 C.F.R. §1003.6(c)(5) and require ICE to provide a justification for the extension. (ECF No. 1 ¶¶62–63.)

Cirrus Rojas nevertheless calls these procedures inadequate. He complains that ICE is merely required to "submit a motion" and criticizes the procedures for allowing ICE to incorporate by reference the arguments in its brief. (*Id.* ¶63.) He further protests that the procedures then allow for a further five-day stay if the Board of Immigration Appeals rules in a noncitizen's favor, authorizing release on bond, or denying DHS's motion for a discretionary stay, to provide ICE time for further appeals. (*Id.* ¶65 (citing 8 C.F.R. §1003.6(d).) He also does not like further procedures allowing referral of custody cases to the Attorney General, who has ultimate statutory authority over detention and removal proceedings, for a limited 15-day time period. (*Id.* ¶66.)

Just describing these many procedural protections highlights the substantial process that Cirrus Rojas is being provided. That Cirrus Rojas wants different procedures or thinks there should be no right to stay the bond ruling pending appeal, does not mean the existing framework violates due process. His argument that the automatic stay provision detains individuals indefinitely, without a "discernible termination point" is refuted by the very regulations he complains about. (*Id.* ¶72.)

Finally, the government's interest in maintaining the current procedures is significant. As the Seventh Circuit recognized in *Parra*, the United States has a "powerful interest in maintaining the detention in order to ensure that removal actually occurs." 172 F.3d at 958. Cirrus Rojas has not established that his detention exceeds that interest.

In the end, the record confirms that Cirrus Rojas's detention is being adjudicated consistent with a detailed set of procedural protections. Those procedures allow for the stay of his release on bond pending resolution of any appeals, a common practice in our legal system. Cirrus Rojas has now been detained since June 3, 2025, and the stay of his release on bond began on July 15, 2025. Under the regulations, the adjudication of the appeal of his bond ruling must be resolved quickly or the automatic stay will expire. *See* 8 C.F.R. § 1003.6(c)(3). While procedures exist to continue the stay even after that time, those procedures have time limits. And, at most, if ICE prevails on appeal, Cirrus Rojas's detention will be limited to the conclusion of his removal proceedings. And those proceedings are also moving forward, with a hearing scheduled for late October. Cirrus Rojas's detention has an end point, whether he prevails or loses. Given the Court's ruling on the underlying statutory construction issue, there can be little question that Cirrus Rojas's ongoing detention pending completion of the appeal on his bond and completion of any removal proceedings is consistent with due process.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED** and this case is **DISMISSED with prejudice**. The Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 4, is **DENIED**.

Dated at Milwaukee, Wisconsin on October 30, 2025.

s/ *Brett H. Ludwig*

BRETT H. LUDWIG
United States District Judge